Bell, No. 182725. Good morning, Your Honors. May it please the Court. My name is Allegra Glashauser, and I represent Appellant Brian Ru Bell. Your Honors, a lifetime of supervised release is an extreme and unusual penalty. Here, Mr. Ru Bell was given that unusual sentence, and he was also given extreme conditions, constant electronic monitoring for the rest of his life. Probation will read every WebMD search he does. They'll read every e-mail he sends to his mom. They'll see every newspaper article he reads for the rest of his life. This type of unfettered and end-of-life... How old was he when this was imposed? He was about 25, 24 or 25, Your Honor. And that indicates how long this supervision really is. It is an incredibly long amount of time. And in this case, the Court didn't give a reason for this lifetime supervision at any point of the numerous resentencings that Mr. Ru Bell had. The Court, at the initial sentencing, expressed surprise that probation recommended such a long term, but imposed it anyway. The PSR said that Mr. Ru Bell had a low likelihood to reoffend, and yet he still has this lengthy term of supervision. So was this argument waived? I mean, the Court has seen this case for resentencing with directions a couple of times, I guess, and there's an amended sentence that's been entered, and while there was a general rubric about whether these conditions of supervised release were more... were no more than necessary to serve the purposes of sentencing, I'm not sure anyone ever focused really on the amalgam of supervised release and the fairly restrictive Internet access and other similar terms. So did the defense bring this up in a timely way, that this should be the district court's focus, that it required a separate justification? The defense didn't preserve the separate justification of the lifetime of supervised release melded with the conditions. The defense did preserve all the objections to the conditions themselves, but the defense also didn't waive that argument. So this Court is reviewing the lifetime supervised release on plain error. It wasn't raised, and the Court didn't focus on it, but it wasn't waived. It's just an argument that wasn't discussed below, and this Court still has the opportunity to review it. The district judge at the most recent resentencing did do a resentencing, saying, I now resentence you to this lifetime of supervised release. And that's the sentence that the Court is reviewing today. There was no mention by the district judge about why that lifetime supervised release term was appropriate, in particular in the context of the very restrictive conditions that were imposed. And those conditions for the electronic monitoring have no limits. All of Mr. Rubel's computer usage will be monitored. And that's the type of monitoring that this Court has condemned. This Court has said monitoring needs to be narrowly tailored. It needs to be fit with the crime that it's supposed to address. And that's what this Court has said in Lifshitz as well as Browder. When there is only an alert to probation when the person views contraband or does some sort of activity online that is related to the crime, that type of monitoring is okay. It's narrowly tailored. But here we don't have that. Probation sees everything with no tailoring at all. And that's just not appropriate, particularly for Mr. Rubel's personal circumstances. His only crime of conviction was the one that he had here. It was a possession offense. And he has no other history of any sort of physical or other inappropriate contact with children that distinguishes his case from some of the, from Browder and as well as Uhart. So there's no justification for this type of overbroad monitoring. On top of that, he has these vague preapproval conditions that even the court, the district judge says that she does not know what the list of conditions means. At sentencing, defense counsel says, can he watch a movie without getting probation's approval? Can he watch Netflix? Can he download iTunes? And the court says, who knows? Does he have an opportunity in any way to challenge the condition in 20 years as the technology changes and monitoring changes and he's 20 years older and he has established a record of one kind or another? Or is the sentence the sentence and that will be the end of it? Well, no. I think he can come back to court if conditions change and ask for a modification. But the conditions right now on today's technology that he is under today are the problem today. Today, he has to comply with these preapproval categories that include downloads, free hosting, alternative lifestyles. I don't know what alternative lifestyles mean. I offer a number of definitions in my brief. The government doesn't respond. The district court doesn't know really what downloads covers other than, I guess, what it means, which is almost everything. And it can conclude going on the Library of Congress or even the Sentencing Guidelines website to download a document about a legal matter. Well, the district court made an effort to try to narrow to those categories, which then are not banned but require preapproval to work out some of the details about what is and isn't allowed going forward with probation. Isn't that right? That's true. It's not a ban. But it is a rule. But what's so burdensome about that? Why is that not tailored to the offense here, the threat? The categories don't match the offense. So I'm not sure what alternative lifestyles or a free hosting website has to do with possession of child pornography. They're not related. They're broad categories. And so I think the district court's effort, it seemed like, was to try to identify the category where, within there, there may be types of sites that require some scrutiny. And I don't understand why that's problematic. Because broad categories are problematic. The court has to tailor the conditions to meet the offense. That's what the district court's job is, to create conditions that meet the purposes of sentencing. So when we have a district court saying, yes, downloads is overbroad because it would include your car registration form that you would have to wait to download, ask probation if it's okay, wait another three days until probation says, okay, yes, download your car registration form, that's a problem. The district court is recognizing that the categories are too broad but then imposing them anyway. What the court can do is say, you need preapproval to download anything that has to do with, I don't know, say, child pornography or any sort of sexually involved website, which is some of the categories. But the court can't just expand that to include vast swaths of the Internet. And it includes sexually involved websites that don't involve children. That's true. But that was a separate condition in this case, that he could not access those websites. So that's already covered by a different condition. But the condition here is not only overbroad, which the district court recognizes, it's also vague. So Mr. Rubel doesn't know what he can and can't do on the Internet until he asks probation, which has a chilling effect on his ability to comply with his conditions. Vague conditions don't put the defendant on notice of what he can and cannot do. And this court has specifically condemned those. You have to know what's allowed and what's not. And the district court's comments at sentencing make clear that even she doesn't know when she says, who knows. Then she also delegates further to probation with the treatment provider to determine sort of the whole context of how Mr. Rubel can use the Internet. In this context, what would a treatment provider be? A psychologist? A leader of a group? My understanding is they're generally clinical social workers who specifically work with people who've been convicted of sex offenses. And so I think it's a good question. That person isn't a First Amendment scholar, not somebody who necessarily has experience with the Internet or anything like that. So it's delegating decisions about the Internet, decisions about Mr. Rubel's First Amendment rights, to somebody who isn't a lawyer, isn't a judge, and has no particular expertise in that area. The person's expertise is in therapy, in treating somebody. But that is the relevant expertise, isn't it? To what Mr. Rubel can view on the Internet? Well, to assure his treatment, to assure the efficacy of his treatment. That is the person who would know, I presume, what could impair him if he looks at it. Well, I don't think the Court can presume that. I have no reason to think that clinical social workers have expertise in Internet and what Internet usage is appropriate here. And, in fact, it's the judges that have the duty to decide how somebody's First Amendment rights can be constrained in this context and balance that constitutional right against whatever the needs are in the sentencing guidelines or the purposes of sentencing. The judge can't just delegate that to somebody who does not have that authority or any reason to consider Mr. Rubel's First Amendment rights. How would you distinguish this case from Ewert, or I don't know how to pronounce it, but that we just handed down? Yes, Your Honor. In Mr. Ewert's case, which was a summary order from this Court, the Court focused heavily on his individual characteristics. Specifically, the Court talks about how he had 10 separate instances of physical sexual abuse of minors, in addition to conversations online with minors. And the Court talks about the very troubling conduct. It was established in the PSR? And subsequent reports from the therapists that were introduced before the modification. And the Second Circuit, in issuing the decision, focuses on those individual characteristics and saying, in his circumstance, those conditions were appropriate. Here, we have somebody with a completely different set of circumstances other than the fact of the same conviction. Mr. Rubel doesn't have any of that separate history of any type of physical sexual abuse of children at all. Okay. His only conduct is the crime of conviction. All right. Thank you very much. You have two minutes to rebuttal. We'll hear from the government. Thank you, Judge Carney, Judge Jacobs, Judge Park. May it please the Court. Mr. Rubel is a man who needs treatment and needs monitoring. His history, his characteristics, his actions in this case, and his actions while he was on supervised release before all lead to that simple conclusion. He needs monitoring and he needs treatment to protect himself and to protect others. Judge Seibel fully understood this. She went in detail each time that she sentenced him to the concerns that she had about his effect on himself and on others around him. Does it matter that he was never even accused of touching a child? Well, that's kind of right. He wasn't accused of touching a child originally. At his original sentencing, in fact, the PSR showed that he told the evaluators who were determining his chance of sexual offense, among other things, that he had never had any attraction to or contact with any minor. While he was on supervised release, he admitted to his therapist that, indeed, while he was 19, he had had sex with a 16-year-old. It's not a huge delta in the way of, if it were, an 8-year-old, but it does show that he was not being forthcoming when he was speaking with his original evaluator. In addition, while he was on supervised release, he told his therapist, when he was asked about do you have sexual attraction to minors, that was when he came up with the statement, you know, I don't believe that there's any problem between adults and 12- or 13-year-olds having sex. It's just that society imposes this unreasonable ban on it, which is indicating that he's simply going to have sex with minors. He has a loathsome opinion, but there's no sign that he's ever acted on it. Well, there are signs that he, among other things, he was having repeated contact. And there's no sign that it was sexual, but it could have turned that way. He was having repeated contact with 7- and 8-year-old girls, despite having been specifically instructed by his probation officer not to do so. Do you mean touching or? No, no, no. Contact he was out with. He wanted to be able to walk her to and from school. In addition to that, he admitted, and he had to be sussed out of him over time, as is made clear in the violation report, he admitted to over 70 uses of Facebook, specifically using computers that he knew were unmonitored and that probation couldn't tell what he was doing. So there, there's the bigger problem that nobody knows what it is that he was doing, who he was contacting on Facebook, except that one can draw a pretty negative conclusion about it by virtue of the fact that he does it over 70 times, specifically acting to evade detection by the probation office. What worries me in this case is that he, there's a record of his lying to. I'm sorry? There's a record of his lying to probation. Could you fill that out? Sure thing. So he lies to probation about... About material things? Yes, about material things. He lies to probation about, among other things, this use of Facebook on the computers at the Bronx Community College, where he tells them, I'm not using any unauthorized equipment, and then the therapist comes to them and says, hey, he admitted he has a Facebook account. That seems odd that he has a Facebook account, since we understand he's not supposed to be going on it, and you would have let us know. So they go to him, and this is set forth in the violation report. They go to him, and at first he says, okay, I accessed it maybe 10 times. They press him more, maybe 10 or 15, press him more, maybe 30, press him more. Finally, okay, over 70 times I've been on Facebook without you knowing about it and without telling you about it. He's told by probation, you cannot associate with a 7-year-old girl, and then he proceeds to, and the violation report doesn't make clear if it's a separate girl or if it's the same girl, but he proceeds to accompany a 7- or 8-year-old girl. After having been told by probation very specifically. Sotomayor, is this a relative? This is a relative of a friend, so not a relative of his. And he had explained that to probation. He said, it's a friend of mine, and she has a young girl. Then he was candid with probation about that. Well, he was candid at first. He did not then reveal to them that despite their specific instruction not to do this, that he continued to do so. Could you help me on the lifetime aspect of this term of supervised release? I gather he was in his 20s when it was first imposed. Now he's 34, and there's a reimposition of a lifetime of supervised release. And, of course, we live in an age where, as the Supreme Court has recognized, access to social media, access to the Internet is an integral part of our lives, our financial lives, all different parts of our lives. And when we remanded to the court, or we denied the Anders motion in July, we asked the court to consider, and the party's briefs to address, whether the prohibitions imposed involve a greater deprivation of liberty than is reasonably necessary and so on. Which seems to me involves both the terms that your colleague has challenged for vagueness and so on, but also the length of time on which they're imposed. Now, there seems to be plenty of reason to be concerned about Mr. Rubel and his future and whether he'll be able to conform his behavior to our expectations and to the law. Nonetheless, a lifetime, which could be 60 more years, is a big deal. It's a very significant deprivation. And I guess I recognize that he can apply for modifications at different times. I don't really have a sense of how easy that is. And I wonder whether, I mean, I would feel more comfortable if the district court and the government considered that aspect of the term of supervised release in a very explicit way, the need to have a lifetime of 60 years potentially or longer of these kind of very restrictive conditions imposed. Could you address my concern? Fisherman. Certainly. And if I may just split that up into two things to make sure that I'm addressing the right part. There's the question, which is what was raised in the appellate briefs, of whether it was appropriate to impose a lifetime term of supervised release overall. And it sounds like what Your Honor is getting at instead is putting aside whether it's appropriate to impose a lifetime term of supervised release, which was not within the mandate of this Court when it sent it back, but rather whether the Court, even in saying you're sentenced to lifetime supervised release, should have put some end date on the computer monitoring program or some wind down on the computer. Well, I would just clarify by saying I think it is part of the mandate because the term as well as the qualities of the supervised release I think are both part of the calculus whether it is a greater deprivation than necessary to meet the ascribed purposes. Well, respectfully, I would disagree. And I would agree as to that second bucket. That is, I would agree that the Court could have under the mandate considered should I have some wind down or end date on the computer monitoring portion of supervised release, however, for the overall length the problem is that the Court said, and I quote, if the district court, and this was where it allowed modification, if the district court decides to retain all or part of the computer-slash-internet-monitoring-program condition or to modify the condition, it should explain its reasoning so as to permit appellate review. That was part of this Court's remand order. And so I think that it was pretty clear that the remand was limited very narrowly to the computer-monitoring condition. And that is precisely why it was that below the parties briefed and only argued issues dealing with or immediately adjacent to the computer-monitoring condition rather than the overall length. Yeah. You are quoting from our October 2017 order on which I sat as well. Yes. And the July order that preceded it denying counsel's motion to withdraw had the broader language. But it seems to me it's an essential part of a reassessment of a sentence that includes a term that's so draconian, even if ultimately it turns out to be warranted. It seems that the government ought to be put to justifying a lifetime term that includes very heavily restricted access to the Internet. And I think that even if it had not been, even if this had been an issue that was preserved for Judge Seibel, that is, that the remand had permitted a consideration of the overall term of supervised release, and even if it hadn't been an issue that was waived, it's reasonable for Judge Seibel to impose what is, frankly, a guidelines sentence of supervised release, of lifetime supervised release for a number of reasons. The first of those is simply that it is a guidelines sentence. While we can't presume reasonableness, this Court has said over and over again that when something is within the guidelines, that's a pretty good checkmark toward reasonableness, even if it doesn't establish it affirmatively. And here there is a guidelines that this should be lifetime supervised release. I mean, there should be. There was a range, wasn't it, of supervised release? Or was the guidelines must be lifetimes? I want to say the guideline is a straight life sentence here. Okay. I'll check. Let me ask you this. I mean, there's a tendency in considering each of these conditions to look at each one separately and decide whether it's reasonable. But isn't it more proper to look at all of them together and in the context of their being imposed for a lifetime in order to find out whether the whole thing is reasonable? And that's where questions arise. Well, the answer is, yes, it is proper to consider them all as one, that is, to take a holistic approach. I absolutely agree with you, except I think that when you consider them holistically and understand how these conditions interact with one another, that's part of what makes it so fundamentally reasonable, because each of these conditions that's Yes, the question, they do interact. The question is whether they snowball until they become unreasonable. Well, putting aside for the moment the fact that the Ewert Court, considering precisely the same conditions, Ewert didn't address the lifetime supervised release, but as for the conditions. Well, that's what I'm sort of asking. Once you, then you do it for a lifetime, you have to look at the whole thing. Well, one of the key points here is that a lot of this is dynamic, which is necessary considering that you're dealing with the Internet, which is both vast and dynamic, where websites are created, deleted, changed, terms of service are changed. Which way does that cut? Well, that cuts very importantly toward the fact that this is dynamic in that, among other things, it allows his access to certain sites to be dictated in part by does the website, has the website determined that sex offenders can or cannot access this website. Right now, as was brought up, Facebook has as a term of service that a sex offender Well, I can't imagine a website saying, you know, sex offenders are invited. I mean, you're basically going to, the safer thing is to say keep away. But that's not what all websites say. In fact, most websites don't say that. The only two websites that are in the record, because they were the two websites that were brought up simply as examples of both being owned by Facebook, were Facebook and Foursquare, and Foursquare does not bar. But the problem is with the breadth of the categories here, the vagueness. Like, what does download media mean and download and web mail? Those do seem vague and extremely broad. Well, importantly, the answer is that those are somewhat broad, and that's for a reason, which is it's difficult to say, here are 500,000 websites that are in existence today that you have to seek preclearance for. And remember, this is very important, I think. This doesn't bar him from going to websites that fall under that. It's a, this was in reaction to the fact that when these terms were proposed, one of the concerns that Mr. Rubel rightly raised was he said, you know something, there's terms of use, there's what would my therapist say as to whether this is a website that I can go to. How am I to know that in advance? And this is to take the burden off of him. You know something? You can go to your probation officer and your probation officer will deal with figuring that out. And remember, the probation officer doesn't have the discretion to simply deny anything. He has to either say, I have checked all of the categories that Judge Seibel set forth, and you are permitted or you are not within three days. And if he doesn't respond within three days, go at it. That is, this is simply a delay mechanism to allow evaluation of determining whether this website, and it's only the first time that you go onto a website. But these aren't even types of websites. Like there's adult and XXX or whatever. But these are types of things that you do on the Internet as opposed to any kind of substantive restriction. Well, presumably a download site would be a site, and we also get to be realistic about how the judge is going to determine this going forward. The download site isn't going to be something where, to take the hypothetical that Ms. Glashauser brought up, that he's going to go onto the DMV and download a car registration form, and all of a sudden Judge Seibel is going to say you should have asked probation before downloading the registration form. A download site is clearly a site intended to permit and facilitate significant downloads. That is, exactly the types of sites that he was using in order to obtain child pornography. Things like BitTorrent that are download sites. And all he has to do is ask his probation officer, and the probation officer will check. Shouldn't that be clarified, though? I mean, that's awfully vague, and he's subject to great penalty if he violates it. Well, again, first of all, it's not a significant burden, though, on him because all he has to do is call or email his probation officer the first time he's going to go to a site that he thinks falls within this. And, of course, you have to intentionally violate a term of supervised release in order to be held to account for it. So, again, the hypothetical, what if he goes on a site that it turns out was created by a free hosting site, but there's no way for him to know that, there could be no penalty for going onto that because there's no knowing violation of the terms of saying I went onto a free hosting site. But he wouldn't be able to go on it. He'd have to get permission from his – from the probation officer. Only if he knew that it was a free hosting website. I mean, that's part of the thing here is, remember, it's – violations require mens rea. You have to knowingly violate the terms of your supervised release. So the concern, what happens if there's a site that no reasonable person looking at it would realize that it may fall into one of these categories, so he doesn't check with his probation officer, and it turns out afterwards that it was created using one of these categories of websites. There's not going to be a knowing violation there. If, on the other hand, he's going onto BitTorrent, which he knows full well is a site to download child pornography, at that point he should have asked his probation officer, who – my guess is with BitTorrent he would say I checked with a therapist and the therapist said you can't go onto a site that's used to download child pornography. Or for that matter, when it says webmail, if he calls up and he says I'd like to go on Gmail, that's going to be a real quick answer. Of course you can go on Gmail versus I'd like to go on ProtonMail, which is a webmail specifically designed to evade monitoring and to evade law enforcement. Presumably the probation officer would say that violates the monitoring condition because we can't monitor ProtonMail because that's a website that's specifically designed to evade monitoring. And am I correct in understanding that 20 years hence, when he's 50, he would be able to apply to the court for a revamping of these conditions to reflect current technology and his own mental health state. Is that right? He could do so tomorrow if he wanted to. Okay. Arguably because it was appealed, he'd have to wait until the decision here for the court to make a decision. But under section 32.1 and 3583, at any given time he has the ability to approach the court and seek a revamping. And by the way, that revamping can also say, hey, Judge, the categories that you sent out, these are confusing me. I'm having a real difficulty figuring out which of these categories I can and cannot go to my probation officer and I'd like some clarification. And presumably that's something that could be cleared up with the judge. It could also be cleared up with his probation officer. All right. Thank you. Because some of these things are so vague that the judge doesn't quite understand their scope. So you're saying all you have to do is just go to the judge and say, I don't understand it. But if the judge says, I don't understand it either, where are we left? I'd like to correct one thing because that's not what the judge said. The judge didn't say that it was so vague that I don't understand. Well, I don't think any judge can understand some of these things. I don't think anybody can understand some of them. Well, I can't say that I would necessarily understand every single one offhand, but I am not somebody who's looking around in certain categories of websites. However, one thing that's really important that I know that Ms. Glashauser has relied on is the judge saying, I don't know if you can go on Netflix, I don't know if you can go on iTunes, had nothing to do with categories or with vagueness. What she was saying is, I've never looked at the terms of service of those. I've never spoken to your therapist. I don't know what's available. I don't know if Netflix just has Disney movies on it, or if you can also get hardcore pornography that your therapist would say you can't go. And that actually defines why this system works. Because to get rid of the system is to require Judge Seibel to intervene at every single website and make an individual determination. Her entire full-time job would be monitoring and interacting with Brian Rubel, which is simply not how the law works. And poor Judge Seibel. I hate to think of what it would do to her. Thank you. I think we have your argument. Ms. Glashauser. Thank you. Please take an extra couple minutes. We kept the government well past its time. Thank you, Your Honor. Starting with the vagueness of the categories, I think that the government has put forth some different categories that might not be vague, like if you were going to go on BitTorrent, or a website that is very similar to BitTorrent, ask probation. That seems related to possession of child pornography, but that's not what the categories say. And the DMV example wasn't something that I thought up. That was what the district court judge thought up, because she said specifically that would be an example of something he would need to get permission to do. So everyone agrees, it seems the government agrees, too, that these categories aren't clear and that they do cover by their terms things that don't relate to sentencing and that no one would have any concern about. I don't know how much further we need to go. That means that these categories need to be changed, that they need to be vacated and sent back for the district court to make categories that make sense, that we can all understand. Are you aware of categories that have been applied in similar cases that you find have adequate clarity? Well, Your Honor, in UART there were also categories. I objected to those as well, but they were more narrow than the categories here. There were fewer of them, and some of the categories that we've been focusing on, like downloads and download media, did not appear. So I don't think that those categories met the clarity requirement, but they were less broad than what we have here. So that's the only one that I am aware of, but I don't doubt that the parties and the court could come up with something that is more narrowly tailored than what we have here. Speaking to the lifetime supervised release and how that interacts here, first of all, the guidelines were five years to life for the supervised release. So there's a vast guideline range that the judge could have looked to. And I think it's completely right that the judge should make a determination on the record about whether or not lifetime supervised release in the context of these conditions is appropriate. In UART, which we've been talking about, there was only a 10-year term of supervised release. I believe it was 10 years, and it was certainly less than life. So this is a reason to remand back to the district court. I also just want to point to some overstatements that the government makes about the record. This is a case that is clearly different than cases where anyone has any allegation of contact offenses. And the violation conduct that brought this case back into court, those were all lowest-level violations, and none of them had anything to do with any sort of sexual or other inappropriate physical or communication with children. So I just want that to be clear, that this is nothing like those cases. And there's also, at the time of the resentencing that the most recent resentencing, Mr. Hubel had been in complete compliance with his conditions for over a year. So despite past difficulty, he had been doing quite well. And nonetheless, the judge reimposed a term of lifetime supervised release and imposed these exceedingly burdensome internet monitoring conditions. All right. Thank you very much. Very well argued. We'll take the matter under advisement.